UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RUSSELL COWLES,

    Plaintiff,

v.

    Case No. 2:23-cv-600-KCD-NPM

GRETCHEN HENTSCH-COWLES,

    Defendant.
_____/

## ORDER

The law firm of Cole, Scott & Kissane, P.A. ("CSK") has filed a motion asking the Court to settle a bill. (Doc. 246.) After guiding their former client, Defendant Gretchen Hentsch-Cowles, through this litigation to a global settlement, the firm now finds itself at odds with her over when they get paid. CSK wants their fees now, out of the settlement proceeds currently held in escrow. Defendant, pointing to the fine print of the parties' agreement, argues that the debt does not mature until six months after the death of a third party—her ex-husband, Russell Cowles. (Doc. 248.)[1]

The parties have plenty to say about the plain meaning of their contract and whether the promissory notes Defendant also executed serve as a secondary or exclusive payment mechanism. But before we get to the what or

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

when of the fee agreement, we have to look at the where. Specifically, does this dispute belong here? Although the underlying case is technically active on the docket, the answer is no. Because this fee dispute lacks an independent basis for federal jurisdiction and is better understood as a private contract matter, the Court declines to hear it.

We begin with a fundamental principle. Federal courts have limited jurisdiction. We possess only that power authorized by the Constitution and statute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is a first principle of federal jurisdiction that the party seeking to invoke the court's power—here, CSK—bears the burden of establishing that such jurisdiction exists. *Id.* CSK has not carried that burden. Its motion offers no independent jurisdictional hook—no federal question and no diversity of citizenship—that would allow the Court to adjudicate what is, at its core, a state-law debt collection action. *See, e.g.*, *Myers v. Cent. Fla. Invs., Inc.*, No. 604-CV-1542-ORL-28DA, 2010 WL 2541792, at *2 (M.D. Fla. May 26, 2010). Indeed, CSK fails to even mention jurisdiction. (*See* Doc. 246.) Its motion simply presumes that because the Court presided over the underlying litigation, it must also preside over the fallout of their billing relationship. But fee disputes do not automatically create a justiciable controversy. *See, e.g.*, *Broughten v. Voss*, 634 F.2d 880, 882 (5th Cir. 1981); *Gomez v. Lopez*, 353 F. Supp. 3d 1212, 1214 (N.D. Ala. 2018).

The only other basis to resolve this dispute is ancillary jurisdiction. *See Am. Fed'n of State, Cnty., & Mun. Emps. (AFSCME) Council 79 v. Scott*, 949 F. Supp. 2d 1239, 1243 (S.D. Fla. 2013) ("[T]he ancillary jurisdiction doctrine is often utilized to adjudicate the resolution of disputes between a party to a federal lawsuit and that party's attorneys over the proper amount of fees due to the attorneys for work performed in the lawsuit."); *see also United States ex rel. Fuentes v. Genzyme Corp.*, No. 8:09-CV-1245-T-23EAJ, 2014 WL 12693528, at *2 (M.D. Fla. May 9, 2014). But ancillary jurisdiction is not a rubber band that stretches to cover any post-settlement squabble. It is instead a narrow doctrine. The idea behind ancillary jurisdiction is that a court may sometimes hear a related claim to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380.

Ancillary jurisdiction is a discretionary doctrine, not a mandatory one. It is used against the backdrop that courts "must be cautious in [their] willingness to expand its jurisdiction." *Bruton v. Carnival Corp.*, 916 F. Supp. 2d 1262, 1265 (S.D. Fla. 2012). When deciding whether to wade into these waters, courts typically look to a series of factors designed to ensure that we are not overstepping our bounds. *See Sec. & Exch. Comm'n v. Mut. Benefits Corp.*, No. 04-60573-CIV, 2021 WL 1520643, at *6 (S.D. Fla. Feb. 22, 2021).

First, we consider whether the ancillary matter arises from the transaction that was the basis of the principal proceeding or is integral to the

main proceeding. *Bruton*, 916 F. Supp. 2d at 1266. While the contested fees were earned here, the current dispute centers on a temporary forbearance mechanism involving separate promissory notes. (*See* Doc. 246 at 1-3.) This is a narrow, post-settlement issue regarding payment timing that is logically distinct from the contract claims that formed the core of the underlying suit.

Second, we must ask if the court can resolve the ancillary matter without a substantial new fact-finding proceeding. *Bruton*, 916 F. Supp. 2d at 1266. Here, the road leads straight into a thicket. To decide CSK's motion, the Court would have to adjudicate the parties' intent regarding the exclusivity of the promissory notes and the details of a secondary payment mechanism designed for a client with liquidity concerns. This could require discovery and evidentiary determinations on contractual claims and defenses that are far afield from the underlying (and resolved) litigation.

Third, we look at whether declining jurisdiction deprives the parties of important rights. *Bruton*, 916 F. Supp. 2d at 1266. It does not. CSK can pursue its contract claims in a Florida court, which is well-equipped to handle state-law contract disputes. The discharge of this motion here does not adjudicate the merits of the firm's underlying claim to its earned fees.

Finally, we consider if the matter must be decided to protect the integrity of the proceeding or ensure its disposition is not frustrated. *Mut. Benefits Corp.*, 2021 WL 1520643, at *6. The federal interest here has been satisfied

because the parties reached a global resolution of the underlying litigation. (Doc. 237.) Deciding this billing spat is not necessary to render complete justice to the parties regarding the claims they brought in this forum. To involve a federal court in a lawyer's fee dispute that centers on work performed in a now-settled case is an "undue extension" of ancillary jurisdiction. *Bruton*, 916 F. Supp. 2d at 1268.

Comity further counsels against retaining this fee dispute. The power to determine the meaning of state law belongs primarily to state courts. This dispute is governed by Florida law and involves professional conduct standards set by the Florida Bar. Federal courts should be "reluctant to speculate" on such matters when a state court is perfectly capable of handling them. *Pugh v. Wilson*, 693 F. Supp. 1096, 1100 (S.D. Fla. 1988). Furthermore, the parties' final fee agreement points elsewhere. It contains a mandatory forum-selection clause requiring that any action "arising from or related to" the agreement be brought in the trial courts of Miami-Dade County. (Doc. 247-1 at 8.)[2] It would be a strange use of federal power to exercise discretionary jurisdiction over a state-law contract dispute when the parties themselves expressly bargained to have that issue heard in a state forum. When the parties agree on where they want to litigate, we should generally listen.

---

[2] For ease of reference with this composite exhibit, the Court cites the page numbers generated by its electronic filing system.

When the underlying litigation reaches a resolution, as here, the federal court's ancillary jurisdiction should generally reach a conclusion as well. Because CSK has not offered an independent jurisdictional hook for this fee dispute, and it would otherwise require this Court to resolve complex, unrelated contract issues, it will not be heard here. CSK and Defendant are free to litigate the timing of her payments in the courts of Miami-Dade County. For these reasons, it is **ORDERED**:

1. CSK's Motion for Determination of Entitlement to Payment of Attorneys' Fees & Costs Post-Settlement (Doc. 246) is **DENIED WITHOUT PREJUDICE**;

2. Because neither party has filed a valid motion or paper to reopen this case (Doc. 237), it is now final and **CLOSED** per the Court's prior order.

**ENTERED** in Fort Myers, Florida on January 6, 2026.

Kyle C. Dudek
United States District Judge